[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10401

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 5, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-22257-CV-PCH

PVC WINDOORS, INC.,

                                                          Plaintiff-Appellant,

versus

BABBITBAY BEACH CONSTRUCTION, N.V.,
a Saint Maarten Company,
BABBITBAY BEACH DEVELOPMENT CORPORATION, B.V.,
a Saint Maarten Closed Company,
COLUMBIA PROPERTIES ST. MAARTEN, LLC,
an Anguillan Limited Liability Company,
SUN MARTIN LIMITED,
an Aguillan Dissolved Corporation, by and through
their last Board of Directors,
COLUMBIA SUSSEX CORPORATION,
a Kentucky Corporation,

                                                          Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 5, 2010)

Before TJOFLAT and CARNES, Circuit Judges, and THRASH,[*] District Judge.

TJOFLAT, Circuit Judge:

This case arises out of two contracts for the supply and installation of windows and doors for a hotel construction project on the island of Saint Maarten in the Netherlands Antilles. PVC Windoors, Inc. sued the parties with whom it contracted and others for breach of contract and fraud in an effort to obtain payment for work it performed.[1] The defendants moved the district court to dismiss the case on the ground that the court lacked jurisdiction over their persons, and the court granted their motion. Because the defendants did not do business in Florida, were not otherwise subject to the reach of Florida's long-arm statute, and lacked minimum contacts with Florida, we affirm the decision of the district court.

I.

A.

PVC Windoors, Inc. ("PVC") is a Florida corporation with its principal place of business in Miami-Dade County, Florida. PVC supplies and installs

---

[*] Honorable Thomas W. Thrash, United States District Judge for the Northern District of Georgia, sitting by designation.

[1] PVC Windoors, Inc. invoked the district court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a)(1)–(2).

doors and windows for residential and business customers. None of the defendants is incorporated in Florida or maintains a principal place of business in Florida. Babbitbay Beach Construction, N.V. ("Babbitbay Construction") and Babbitbay Beach Development Corporation, B.V. ("Babbitbay Development") are Saint Maarten companies with their principal places of business in Saint Maarten, Netherlands Antilles. Columbia Properties Saint Maarten, LLC ("CP") is an Anguillan limited liability company with its principal place of business in Anguilla. Sun Martin Limited ("Sun") was an Anguillan company with its principal place of business in Anguilla, but was dissolved on or about March 24, 2006, prior to the commencement of this litigation. Columbia Sussex Corporation ("Columbia Sussex") is a Kentucky corporation with its principal place of business in Fort Mitchell, Kentucky.

On February 17, 2006, PVC entered into two separate contracts to supply and install windows and doors for the Dawn Beach Resort & Spa and Dawn Beach Resort Condominium in Saint Maarten (the "Project"). The first contract was with Babbitbay Development; PVC agreed to transport the materials and equipment to be used in the installation of the windows and doors on the Project ("Agreement 1"). The second contract was with Babbitbay Construction; PVC agreed to supply

the labor for the installation ("Agreement 2").[2] Columbia Sussex, CP, and Sun did not sign either of the contracts. Prior to the execution of the two agreements, Columbia Sussex orally represented to PVC that, if PVC contracted with Babbitbay Construction and Babbitbay Development, Columbia Sussex would guarantee Babbitbay Construction's and Babbitbay Development's performance of the respective contracts, including the sums due PVC for the work.

## B.

Shortly after work began on the Project, contractual disputes arose between the contracting parties. When the disputes were not resolved to PVC's satisfaction, PVC filed a multi-count complaint in the Circuit Court of Miami-Dade County, Florida, against Babbitbay Construction, Babbitbay Development, Columbia Sussex, CP, and Sun. PVC alleged numerous material breaches of the two contracts: Babbitbay Construction and Babbitbay Development failed to pay for completed work; they required PVC to perform extra work without compensation; they changed the terms of the contracts by requiring PVC to employ a shipping agent and a subcontractor; they wrongfully terminated the agreements; and Columbia Sussex, which had guaranteed the performance of the

---

[2] Agreement 1 stated that it "relate[d] to the providing of materials, equipment, and other items in connection with the construction of the new [Project]," and Agreement 2 stated that it "relate[d] to the providing of labor, services and other items in connection with the construction of the new [Project]."

4

contracts, had failed to pay PVC in accordance with the terms of the agreements. In addition, PVC alleged that Columbia Sussex had fraudulently induced it to enter into the contracts by representing that if PVC contracted with Babbitbay Construction and Babbitbay Development, it would guarantee those parties' performance of their obligations.

The defendants removed the case to the United States District Court for the Southern District of Florida. See 28 U.S.C. § 1441. One month later, they jointly moved the court to dismiss them from the case for lack of personal jurisdiction. In lieu of responding to the motion to dismiss, PVC filed an amended complaint.

The amended complaint contains 151 paragraphs and ten counts.[3] Seventy-three paragraphs precede Count I and describe the events that led to Agreements 1 and 2 as follows. In early 2005, Columbia Sussex solicited bids from contractors in Florida, including PVC, to supply and install windows and doors for the Dawn Beach Resort & Spa and Dawn Beach Resort Condominium in Saint Maarten. PVC responded to the solicitation and, in November 2005, Columbia Sussex requested PVC to submit a bid. PVC complied. In February 2006, Columbia Sussex informed PVC as follows: PVC's bid was being forwarded to the

---

[3] Attached to the amended complaint and incorporated by reference were the contracts between PVC and Babbitbay Construction and Babbitbay Development.

companies developing the Project, Babbitbay Construction and Babbitbay Development. Although Columbia Sussex was the "real party in interest" in the development of the Project, any contracts PVC entered into would be with those two firms. Columbia Sussex, however, would "guaranty [sic] payment and performance of such agreements." Babbitbay Construction and Babbitbay Development accepted PVC's bid and entered into separate contracts, Agreements 1 and 2.

Count I incorporates paragraphs one through seventy-three, and each of the nine succeeding counts incorporates all preceding counts, such that Count X amounts to an amalgamation of all counts of the complaint.[4] Among the allegations preceding Count I is the claim that Babbitbay Construction, Babbitbay Development, CP, and Sun are alter egos and mere instrumentalities of Columbia Sussex, and that the latter is the party that actually controlled these entities and

---

[4] The amended complaint is a typical shotgun pleading. This court has condemned such pleadings in a series of cases stretching back at least as far as Pelletier v. Zweifel, 921 F.2d 1465, 1517–18 (11th Cir. 1991) (describing such pleadings as "replete with factual allegations that could not possibly be material to any of the causes of action they assert"), and we do so once more here. Shotgun pleadings impede the administration of the district courts' civil dockets in countless ways. The district court, faced with a crowded docket and "whose time is constrained by the press of other business, is unable to squeeze the case down to its essentials." Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1333 (11th Cir. 1998). It is therefore left to this court to sort out on appeal the meritorious issues from the unmeritorious ones, resulting in "a massive waste of judicial and private resources; moreover, 'the litigants suffer, and society loses confidence in the court[s'] ability to administer justice.'" Id. (quoting Ebrahimi v. City of Huntsville Bd. of Educ., 114 F.3d 162, 165 (11th Cir. 1997)) (alteration in Johnson Enters.).

engaged in the conduct giving rise to PVC's claims.[5]  Count I, "fraud in the inducement," alleges that Columbia Sussex and the other defendants collaborated to make representations to PVC to induce it to enter into Agreement 1, knowing that PVC would not be paid for its work.  Count II repeats the same "fraud in the inducement" allegation with respect to Agreement 2.  Counts III and IV allege that the defendants breached Agreements 1 and 2, respectively.  Count V alleges that Columbia Sussex fraudulently induced PVC to enter into Agreements 1 and 2 by promising that it would guarantee the payments due PVC under those agreements, a promise that it intended not to keep.  Count VI alleges that Columbia Sussex breached that promise.  Count VII purports to be for "declaratory judgment," adjudicating the defendants' joint and several liability for the payments due PVC under Agreements 1 and 2, while Counts VIII, IX, and X state "alternative" claims for unjust enrichment, quantum meruit, and open account, respectively.

The amended complaint alleges that the defendants' "wrongful acts" subjected the defendants to process under Florida's long-arm statute (and thus to the district court's jurisdiction over their persons) because Columbia Sussex had

_____

[5]  PVC's amended complaint contains no factual allegations to support the assertion that the non-Columbia Sussex defendants are alter egos of Columbia Sussex.  Instead, the amended complaint merely contains the bare conclusion that they are such.

7

solicited bids for the Project work from Florida contractors, including PVC, and, in the process, had used "telephonic and other electronic means in Florida."

The defendants responded to the amended complaint by jointly moving the district court to dismiss the case under Federal Rule of Civil Procedure 12(b)(2) for lack of jurisdiction over their persons. Their motion asserted that the amended complaint on its face showed that none of PVC's claims related to any activities that took place in Florida, and that the mere fact that Babbitbay Construction and Babbitbay Development were parties to a contract with PVC, a Florida corporation, did not satisfy the minimum contacts requirement of personal jurisdiction. Attached to the motion to dismiss were four affidavits of Theodore R. Mitchel, one for each of the defendants except Columbia Sussex. Each affidavit denied that the defendant maintained an office in Florida, appointed an agent for service of process in Florida, had property in Florida, or employed anyone in Florida.

PVC responded to the defendants' motion by filing the affidavits of PVC's chief executive officer, Gaston Boudreau, and its director of sales, Yves Saint-Pierre. These affidavits were identical. They stated that "Columbia Sussex . . . informed [PVC] on or about February 2006, in part in Florida . . . via telephonic and other electronic means that [PVC] would have to enter into written agreements

8

with [Babbitbay Construction] and [Babbitbay Development]," and that "Columbia Sussex . . . would guaranty [sic] payment and performance of such agreements."

After briefing was complete, the district court granted the defendants' motions to dismiss for lack of personal jurisdiction and dismissed the case without prejudice. Citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S. Ct. 2174 (1985), the court found that the defendants' activity in Florida was minimal and clearly insufficient to satisfy the "minimum contacts" required by the Due Process Clause of the Fourteenth Amendment. PVC now appeals that determination.[6]

II.

We undertake a two-step inquiry to determine whether the exercise of personal jurisdiction over a nonresident defendant is proper. First, we determine whether the state's long-arm statute provides jurisdiction. Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009). Only where the long-arm statute provides jurisdiction do we proceed to the second step and determine whether "the defendant ha[s] minimum contacts with the forum state" and, if it does, whether the district court's exercise of jurisdiction over that defendant

_____

[6] We have jurisdiction under 28 U.S.C. § 1291. Our review of the district court's dismissal for lack of personal jurisdiction is de novo. Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009).

9

would "offend traditional notions of fair play and substantial justice." Id. at 1295–96 (citations omitted) (alteration in original). In this case, in ruling on the defendants' motion to dismiss, the district court bypassed the first step and proceeded directly to the second step. Because the federal courts are duty bound to avoid a constitutional question if answering the question is unnecessary to the adjudication of the claims at hand, see, e.g., Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County, 450 F.3d 1295, 1306 (11th Cir. 2006), we consider first whether Florida's long-arm statute provided the district court with personal jurisdiction over any of the defendants.[7]

A.

---

[7] The section of Florida's long-arm statute that PVC invokes reads:

Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

. . . .

(b) Committing a tortious act within this state.

. . . .

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Fla. Stat. § 48.193(1).

10

The Florida long-arm statute provides two bases for the exercise of personal jurisdiction: specific and general jurisdiction. In this case, PVC relies on the theory of specific jurisdiction. Specific jurisdiction refers to "jurisdiction over causes of action arising from or related to a defendant's actions within the forum." Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1220 n.27 (11th Cir. 2009).[8] In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine "whether the allegations of the complaint state a cause of action."[9] Wendt v. Horowitz, 822 So. 2d 1252,1260 (Fla. 2002); see also 8100 R.R. Ave. Realty Trust v. R.W. Tansill Constr. Co., 638 So. 2d 149, 151 (Fla. 4th Dist. Ct. App. 1994) (explaining that where the sole basis of jurisdiction is the commission of a tort in Florida, the court must necessarily determine whether the complaint states a cause of action in order to determine jurisdiction). We therefore address the amended complaint's counts for fraudulent inducement and breach of contract separately.[10]

---

[8] In contrast, general jurisdiction refers to the power of the forum state to exercise jurisdiction in any cause of action involving a particular defendant, regardless of where the cause of action arose. Oldfield, 558 F.3d at 1220 n.27.

[9] The same is true where the plaintiff is relying on the theory of general personal jurisdiction.

[10] The amended complaint also included, in Counts VIII, IX, and X, claims for unjust enrichment, quantum meruit, and open account. These claims are meritless and are not mentioned in PVC's opening brief as bases for the district court's exercise of personal jurisdiction over any of the defendants. Hence, we do not consider them in the following jurisdictional analysis.

11

1.

The fraud in the inducement claims are asserted in Counts I, II, and V. Although they are asserted against all five defendants, it is clear that Columbia Sussex is the only defendant that, according to the amended complaint's allegations, made any misrepresentations to PVC.[11] We therefore limit our discussion of these counts to what Columbia Sussex may have said to PVC.

A cause of action for fraud in the inducement contains four elements: "(1) a false statement regarding a material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance." Thompkins v. Lil' Joe Records, Inc., 476 F.3d 1294, 1315 (11th Cir. 2007). We are satisfied that the allegations of Counts I, II, and V satisfy the first three of these elements, but not the fourth. Regarding the first three elements, the amended complaint alleges that before PVC contracted with Babbitbay Construction and Babbitbay Development, (1) Columbia Sussex represented that it would guarantee performance of any contracts PVC entered into with those firms; (2) Columbia Sussex knew that the representation was false in that it did not intend to guarantee

---

[11] PVC signed contracts with Babbitbay Construction and Babbitbay Development, but the complaint says nothing about any representations the parties may have made to one another beyond the express provisions of Agreements 1 and 2.

12

such performance;[12] and (3) Columbia Sussex intended to induce PVC to rely on the representation.  The amended complaint alleges that PVC relied on Columbia Sussex's representation, but that is not enough.  It must allege facts establishing that the reliance was reasonable.  E.g., Avila S. Condo. Ass'n, Inc. v. Kappa Corp., 347 So. 2d 599, 604 (Fla. 1977).

The allegations of the amended complaint, taken as a whole, fall short of establishing PVC's reasonable reliance on Columbia Sussex's representation.  If PVC would not have contracted with Babbitbay Construction and Babbitbay Development but for Columbia Sussex's representation, one would expect that when the promised guarantee was not forthcoming, PVC would have demanded that Columbia Sussex provide the guarantee.  But nothing in the amended complaint evidences such a demand.  It appears instead that, without demanding that Columbia Sussex intervene on its behalf, PVC simply took Columbia Sussex

_____

[12]  Under Florida law,

> [a]s a general rule, fraud cannot be predicated on a mere promise not performed.  However, under certain circumstances, a promise may be actionable as fraud where it can be shown that the promissor had a specific intent not to perform the promise at the time the promise was made, and the other elements of fraud are established.

Alexander/Davis Props., Inc. v. Graham, 397 So. 2d 699, 706 (Fla. 4th Dist. Ct. App. 1981) (per curiam) (citations omitted).  The amended complaint alleges that when Columbia Sussex represented that it would guarantee any contracts PVC entered in connection with the Project, it had the "secret and undisclosed intention of not honoring the promise."  In short, Columbia Sussex falsely represented its then-existing state of mind, i.e., it falsely represented that it intended to honor its promise.

13

to court.  Absent an allegation of a demand, we cannot conclude that PVC relied on Columbia Sussex's misrepresentation.  In sum, Counts I, II, and V fail to state a claim for relief.  Those counts were therefore beyond the reach of Florida's long-arm statute.

2.

PVC next argues that the court has jurisdiction of its breach of contract claims, Counts III, IV, and VI, because the defendants "[b]reach[ed] a contract in this state by failing to perform acts required by the contract to be performed in this state."  The conduct giving rise to Counts III and IV consists of Babbitbay Construction's and Babbitbay Development's—as alter egos of Columbia Sussex—breach of Agreements 1 and 2.  The conduct giving rise to Count VI is Columbia Sussex's breach of its promise to guarantee the performance of those contracts.  The defendants effectively concede that Counts III, IV, and VI state claims for relief under Florida law.[13]  We therefore move to the question of whether Florida's long-arm statute provided the district court with personal jurisdiction to entertain these three counts against any of the defendants.

---

[13]  Counts III and IV are based on written agreements.  Count VI is based on an oral agreement to provide what in legal effect would be a payment and performance bond.  The defendants do not contend that such an agreement must be in writing to satisfy Florida's statute of frauds, Fla. Stat. § 725.01.

14

It was PVC's burden to convince the district court that it had jurisdiction over the persons of the defendants. That is, PVC had to satisfy a threshold requirement, the prima facie establishment of jurisdiction. "[T]he plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988) (citing Delong Equip. Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988)). A prima facie case is established if the plaintiff presents affidavits or deposition testimony sufficient to defeat a motion for judgment as a matter of law. Id. "[W]here the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." Id. If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists.[14] If, however, the court holds an evidentiary hearing to adjudicate the issue of whether the court has jurisdiction over the defendant's person, the court determines the credibility of witness testimony, weighs the evidence, and finds the relevant jurisdictional facts.

---

[14] A question the case law and treatises have not answered, as far as we can tell, is whether the district court, after ruling for the plaintiff without an evidentiary hearing—because the court has given the plaintiff the benefit of all inferences reasonably inferable from the affidavits and depositions before it—can revisit the jurisdictional issue at an evidentiary hearing and, depending on the evidence adduced, find personal jurisdiction lacking.

15

In this case, the court chose not to hold an evidentiary hearing to determine whether the court had jurisdiction over the person of any of the defendants. It chose, instead, to determine the existence of jurisdiction on the basis of the parties' affidavits. The court found that personal jurisdiction was lacking under the constitutional due process standard, minimum contacts, rather than under the long-arm statute standard. This is of no moment for our purposes, however, because the same evidence—the affidavits of Mitchel, Boudreau, and Saint-Pierre—is applicable under both analyses.

Mitchel's affidavits were submitted on behalf of all defendants except Columbia Sussex. Mitchel stated unequivocally that none of those defendants ever had any contact with Florida. Boudreau and Saint-Pierre, on behalf of PVC, averred that Columbia Sussex had communications with Florida contractors, including PVC, via "telephonic and other electronic means," and that Columbia Sussex and PVC verbally agreed via "telephonic and other electronic means in Florida . . . to enter into written agreements."[15] Considering the affidavits in the light most favorable to PVC, the district court found that the defendants Mitchel was referring to lacked the minimum contacts with Florida that due process

---

[15] Although the two affidavits did not state when this verbal agreement was made, it apparently occurred prior to February 17, 2006, at a time when PVC thought it was going to contract directly with Columbia Sussex.

16

required. We conclude that these defendants had no contacts with Florida, and thus were not within the long-arm statute's reach.

The only affidavits before the court regarding Columbia Sussex's contacts with Florida were those of Boudreau and Saint-Pierre. Though the affidavits are ambiguous and conclusory, we conclude that they sufficed to establish the district court's personal jurisdiction over Columbia Sussex under the long-arm statute. We therefore move to the question of whether that defendant's contacts with Florida were sufficient to satisfy the Due Process Clause of the Fourteenth Amendment.

B.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a person's liberty interest from being subject to the binding judgments of a forum with which the person has established no meaningful "contacts, ties, or relations." Int'l Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S. Ct. 154, 160 (1945). The Constitution prohibits the exercise of personal jurisdiction over a nonresident unless his contact with the state is such that he has "fair warning" that he may be subject to suit there. Shaffer v. Heitner, 433 U.S. 186, 218, 97 S. Ct. 2569, 2587 (1977) (Stevens, J., concurring in the judgment). A defendant has such "fair warning" if he "purposefully directed" his activities at

17

residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182 (1985) (citations omitted). In this way, the defendant could have reasonably anticipated being sued in the forum's courts in connection with his activities there. Id. at 474, 105 S. Ct. at 2183.

In Burger King, the Supreme Court discussed the circumstances under which a contractual relationship with an out-of-state defendant may satisfy the "purposeful availment" test. The Court noted that a contract with an out-of-state corporation, standing alone, is insufficient to create minimum contacts because a contract is "'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'" Id. at 479, 105 S. Ct. at 2185 (quoting Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316–17, 63 S. Ct. 602, 604–05 (1943)). Where, however, the defendant has purposefully availed itself of the benefits and protections of the forum state in its "prior negotiations . . . [and] contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," the forum state may exercise jurisdiction over the defendant. Id. In that case, the Court found that a franchisee established minimum contacts with Florida by signing a franchise agreement with a Florida corporation. The

18

Court explained that the franchisee planned a "substantial and continuing relationship," id. at 487, 105 S. Ct. at 2190, with Burger King's Florida office by entering into a "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida," id. at 480, 105 S. Ct. at 2186. In addition, the Court found that the franchise agreement's Florida choice-of-law provision reinforced the franchisee's "deliberate affiliation" with Florida. Id. at 482, 105 S. Ct. at 2187.

In a case factually similar to the one here, at a meeting in Florida, a Costa Rican corporation solicited a Florida marine salvage business to conduct salvage operations in Costa Rica. Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A., 792 F.2d 989, 991 (11th Cir. 1986). The boilerplate contract was discussed in part in Florida, in part in Costa Rica, and via facsimile, and was to be governed by English law. Id. at 991–92. We found that the defendant's solicitation of the plaintiff did not constitute purposeful availment of Florida law because the contracted project was a "one-shot operation." Id. at 994. We noted that, while some in-Florida preparation may have been foreseeable, the plaintiff's duties were to be performed exclusively in Costa Rica. Id. Although "significant negotiations of important terms" of the contract in the forum state may constitute purposeful availment, the boilerplate contract in that case did not evidence any such

19

negotiations and the choice of English law indicated that the defendant did not intend to avail itself of the benefits and protections of Florida law. Id. at 993–94 (citation omitted).

Here, the contacts between PVC and Columbia Sussex in Florida are even weaker than the Florida contacts at issue in Sea Lift. Whereas the Sea Lift defendant met with the plaintiff on Florida soil to solicit the latter's entry into a contract to conduct salvage operations—a fact we found insufficient to confer personal jurisdiction—PVC's strongest evidence to this effect is the statement in the Boudreau and Saint-Pierre affidavits that negotiations between PVC and Columbia Sussex took place "in part in Florida." There is no indication of whether this refers to a meeting in person in Florida, or whether it refers to the "telephonic and other electronic means" by which the negotiations occurred. In other words, PVC does not present evidence that Columbia Sussex made even the "foot-fall" that Sea Lift held does not, standing alone, "invoke the benefits and protections of the laws of the forum." Id. at 993.

Columbia Sussex did enter into a one-time arrangement with PVC. After refusing to contract with PVC for the provision of labor and materials for the Project, it informed PVC that its bid for the work had been transmitted to Babbitbay Construction and Babbitbay Development. If its bid was accepted,

20

Columbia Sussex would guarantee the performance of the resulting contract. Columbia Sussex would act like a surety guaranteeing a landowner's payment and performance obligations under a construction contract. If Babbitbay Construction or Babbitbay Development failed to perform, Columbia Sussex would stand in the company's shoes and cure the breach. We cannot say that in agreeing to serve as a surety in this way, Columbia Sussex was intending to create a "substantial and continuing relationship" with Florida.

III.

The judgment of the district court is, accordingly,

AFFIRMED.