**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 24 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RICHARD ALEX WILLIAMS,<br><br>　　　　　Petitioner - Appellant,<br><br>　v.<br><br>CHERYL PLILER, Warden and ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,<br><br>　　　　　Respondents - Appellees. | No. 08-16806<br><br>D.C. No. 2-03-cv-00721-JAM-JFM<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Ralph R. Beistline, Chief District Judge, Presiding

Argued and Submitted December 7, 2010
San Francisco, California

Before: REINHARDT, HAWKINS, and N.R. SMITH, Circuit Judges.

Richard Alex Williams appeals from the district court's denial of his petition

for a writ of habeas corpus. The sole issue before us is whether the prosecutor

violated *Batson v. Kentucky*, 476 U.S. 79 (1986), by striking the only eligible

---

[*]　　This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

African-American juror during the jury selection process. We review the district court's denial of a habeas petition *de novo*, and conclude that the district judge erred in two important ways in conducting his *Batson* step-three inquiry. Although we could conduct a proper step-three inquiry ourselves, *see, e.g.*, *Green v. LaMarque*, 532 F.3d 1028, 1031 (9th Cir. 2008); *Kesser v. Cambra*, 465 F.3d 351, 361 (9th Cir. 2006) (en banc), Williams concedes that it is also acceptable to remand to the district court for it to do so. Accordingly, we reverse and remand for further proceedings consistent with this disposition.

The state concedes that AEDPA deference does not apply here because the state trial court applied the wrong legal standard in determining whether Williams made out a prima facie violation at *Batson* step one. Therefore, the federal courts review Williams's habeas petition *de novo*.

Neither party contends that the trial court reached step three of the *Batson* inquiry, and it is clear that it did *not* do so. Under controlling law, "[a]ny determination about the credibility of the explanation is reserved for the third step, where the court ultimately determines whether discrimination occurred." *Williams*

*v. Rhoades*, 354 F.3d 1101, 1107 (9th Cir. 2004).[1]  Therefore, the trial court could not have made a proper credibility finding.  The district court erred because it accorded deference to the improper finding, and as a result, erroneously required Williams to show clear and convincing evidence that the trial judge erred in denying the *Batson* motion.

The district court also erred in conducting its limited comparative juror analysis, because it only compared Juror Thompson to one other *struck* juror.  The comparative juror analysis is a "centerpiece of the *Batson* analysis." *Boyd v. Newland*, 467 F.3d 1139, 1150 (9th Cir. 2006).  The correct comparison is between the struck juror and jurors who were "allowed to serve." *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005); *see also Boyd,* 467 F.3d at 1147-48 (emphasis added) ( a court must "compare the prospective juror who was stricken with the other prospective jurors *who were not.*").

---

[1]  This holding comports with Supreme Court precedent.  *See Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) ("Step three of the *Batson* inquiry involves an evaluation of the prosecutor's credibility. . . ."). In *Johnson v. California*, 545 U.S. 162, 171 & n.7 (2005), the Supreme Court noted that steps one and two of the *Batson* inquiry govern only the production of evidence; the *Johnson* Court analogized the *Batson* analysis to the Title VII *McDonnell Douglas* burden-shifting inquiry and noted that "determinations at steps one and two of the *McDonnell Douglas* framework can involve no credibility assessment because the burden-of-production determination necessarily *precedes* the credibility-assessment stage." *Id.* (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-10 & n. 3 (1993)) (internal quotation marks omitted).

On remand, the district court should conduct a full step-three inquiry that includes a proper comparative juror analysis. In conducting that comparative juror analysis, the district court should consider all of the juror questionnaires from Williams's trial. Those juror questionnaires were properly presented to the state courts, but were not presented to the district court.[2] The state, however, did not object to the consideration of those questionnaires on appeal, even though Williams repeatedly relied on the questionnaires in his opening brief. Therefore, the state has waived any objection to the consideration of those juror questionnaires before this court or on remand.

The prosecutor relied on the juror questionnaires for several of his rationales for striking Thompson, and the voir dire transcript continually refers to the questionnaires. Any evaluation of the prosecutor's reasons would be incomplete without examining those questionnaires. The questionnaires are especially important for a comparative juror analysis, because Williams contends that a review of the questionnaires for seated jurors reveals that several of the

---

[2]We note that, in some cases, we have reversed the district court for failing to obtain critical parts of the state court record, even when the parties themselves failed to provide that record. *See, e.g.*, *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997).

prosecutor's reasons were pretextual.[3]  We do not reach this issue, although we note that a preliminary review lends some credence to Williams's claims.

The district court's analysis must follow our recent decision in *Crittenden v. Ayers*, 624 F.3d 943 (9th Cir. 2010).  In *Crittenden*, we held that "the proper analysis at *Batson*'s step three is whether the peremptory strike was motivated in *substantial part* by race.  If it was so motivated, the petition is to be granted regardless of whether the strike would have issued if race had played no role."  *Id.* at 958 (internal citations omitted) (emphasis added).

**REVERSED and REMANDED.**

---

[3] "A court need not find all nonracial reasons pretextual in order to find racial discrimination.  If a review of the record undermines the prosecutor's stated reasons, *or many of the proffered reasons*, the reasons may be deemed a pretext for racial discrimination."  *Kesser*, 465 F.3d at 360 (emphasis added).  In *Kesser*, we cited approvingly to our decision in *United States v. Chinchilla*, 874 F.2d 695 (9th Cir.1989), where we held that when two of the four reasons were pretextual, the prosecutor's reasons may be deemed a pretext for racial discrimination.  465 F.3d at 360 (citing *Chinchilla*, 874 F.2d at 699).