**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

RICHARD ALEX WILLIAMS,

          Petitioner - Appellee,

   v.

CHERYL PLILER, Warden and
ATTORNEY GENERAL FOR THE
STATE OF CALIFORNIA,

          Respondents - Appellants.

No. 14-16393

D.C. No. 2:03-cv-00721-LKK-AC

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior District Judge, Presiding

Submitted April 14, 2015[**]
San Francisco, California

Before: REINHARDT, HAWKINS, and N.R. SMITH, Circuit Judges.

When we initially heard this case, the state informed us that *de novo* review

applied to Petitioner's *Batson* claim, and we so held. *See Williams v. Pliler*, 411 F.

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

    [**]    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

App'x 954, 955 (9th Cir. 2011). We then remanded for the district court to "conduct a full step-three inquiry." *Id.* The district court conducted such an inquiry *de novo*, found that the peremptory strike at issue was motivated in substantial part by race, and ordered the state to release or re-try Williams. We affirm.

## I. Standard of Review

The state now argues, despite its initial position and our initial holding that the standard of review was *de novo*, that we should apply a deferential standard of review. Our earlier holding that the standard of review was *de novo* constitutes the law of the case. The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 562 U.S. 476, 506 (2011) (citation omitted) (internal quotation marks omitted). Here, the district court relied on our decision that *de novo* review was the proper standard of review and expended substantial resources to hold an evidentiary hearing and issue a decision in light of the evidence produced. We are now asked to review that decision which followed our earlier remand.

The state argues that we are not bound by the law of the case because our earlier decision was clearly erroneous. It is true that the law of the case "doctrine

2

'does not apply if the court is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice.'"" *Id.* at 506-07 (citation omitted)); *see also Gonzales v. U.S. Dep't of Homeland Sec.*, 712 F.3d 1271, 1277 (9th Cir. 2013) (noting an exception when "the decision is clearly erroneous and its enforcement would work a manifest injustice" (citation omitted) (internal quotation marks omitted)).[1] We reject the state's argument, however, because our decision that *de novo* review applies was not clearly erroneous, and even if it were, its enforcement would not work a manifest injustice.

## A.

There is no dispute that the test applied by the state trial and appellate courts to determine that Petitioner did not make out a prima facie case was contrary to clearly established Supreme Court precedent, and that those state court decisions are therefore not entitled to deference at step one of *Batson*. *See Johnson v. Finn*, 665 F.3d 1063, 1069 (9th Cir. 2011). The state argues, however, that our decision to apply *de novo* review at the third step of *Batson* was clearly erroneous because the state appellate court issued an alternative merits adjudication at that step.

---

[1] There are two additional exceptions — when "[1] intervening controlling authority makes reconsideration appropriate, or [2] substantially different evidence was adduced at a subsequent trial" — but neither is at issue here. *Gonzales*, 712 F.3d at 1277 (quoting *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995)) (internal quotation marks omitted).

3

The state is wrong. The state appellate court did not clearly reach the third step of *Batson*. In fact, it expressly disclaimed application of *Batson*, noting that "the *Batson* test was not . . . at issue in this case." Its statements that the struck juror at issue "raised several matters the prosecutor could and expressly did reasonably view as grounds for peremptory challenge," and that "[t]hose reasons were . . . proper," "factually appropriate[,] and in compliance with any threshold of assessment," most closely resemble a step *two* adjudication, at which the court must determine whether the prosecutor has "come forward with a neutral explanation for challenging black jurors." *Batson v. Kentucky*, 476 U.S. 79, 97 (1986). That is especially so because neither the state trial nor the state appellate court made a credibility finding as to whether the prosecutor actually struck the juror at issue for the reasons he proffered, and because under *Batson* while we analyze whether the proffered reasons are non-discriminatory at step two, credibility determinations are reserved for step three. *See Purkett v. Elem*, 514 U.S. 765, 768 (1995). In short, none of the district court's statements is in any way dispositive of the ultimate determination that a court must make at step three: "whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Id.* In light of the fact that the state court did not clearly reach

step three and make the determination required under that step, our earlier decision that *de novo* review applied was not clearly erroneous.

**B.**

Even if our decision were clearly erroneous, we would nevertheless apply it as the law of the case because the state has not demonstrated that a manifest injustice would result from its application. "The existence of exceptional circumstances is required before finding a manifest injustice. At a minimum, the challenged decision should involve a significant inequity or the extinguishment of a right before being characterized as manifestly unjust." *Jeffries v. Wood*, 114 F.3d 1484, 1492 (9th Cir. 1997) (en banc) (citations omitted), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012) (en banc). None of the state's rights are extinguished by applying *de novo* review. Unlike in *United States v. Miller*, 822 F.2d 828, 833 (9th Cir. 1987), in which a concession by the government would result in the clearly erroneous suppression of evidence, here the application of *de novo* review affects only the standard of review and does not control the outcome of the *Batson* claim. Indeed, to prevail under *de novo* review the state need show only that its prosecution of Petitioner was consistent with the Fourteenth Amendment. Even if it cannot do so, "[r]etrial and resentencing are available options." *Jeffries*, 114 F.3d at 1492. In fact, "the state superior court has

5

already re-arraigned Williams." Opp'n to Motion for Release at 7. In short, if *de novo* review applies, Petitioner can receive no more than a determination that he did or did not receive a fair trial under the Constitution. And, if his trial was unfair, the state will have an opportunity to prosecute him once more. Such relief does not constitute a manifest injustice. Thus, these circumstances do not meet the relevant exception to the law of the case doctrine.

## II. Merits

Petitioner's first trial resulted in a hung jury due to holdouts by two African-Americans on the jury. At Petitioner's second trial — the one we review here — the prosecutor, Mr. Gold, struck the only clearly African-American prospective juror who was eligible to serve, Ms. Thompson. As a result of the strike of Thompson, none of the jurors seated at Petitioner's second trial was African-American. These circumstances clearly support an inference that discrimination occurred; in fact, there is no dispute that Petitioner satisfied his "minimal" burden at step one of making out a prima facie case of discrimination. *Johnson*, 665 F.3d at 1071. Nor is there any dispute that Gold satisfied step two by articulating facially neutral reasons for the strike of Thompson. The state argues, however, that even if the district court was correct to apply *de novo* review, it nevertheless erred in holding at step three that "the prosecutor was 'motivated in substantial part by

6

discriminatory intent.'" *Cook v. LaMarque*, 593 F.3d 810, 815 (9th Cir. 2010) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 485 (2008)).

"At step three, the question of whether the defendant has proven purposeful discrimination is a question of fact that we review for clear error." *Paulino v. Harrison*, 542 F.3d 692, 699 (9th Cir. 2008) (citation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) (citation omitted). Although less deference may in some instances be accorded a district judge's finding concerning discrimination than that of a state court judge who presided over the trial, here the district court's thorough opinion satisfies our court's review for clear error. The district court carefully analyzed each of Gold's nine proffered reasons for striking Thompson by comparing the jurors' questionnaires and voir dire testimony, and reviewing the juror-challenge hearing held at the state trial court and the evidentiary hearing held in the district court. The district court's factual determination that the strike of Thompson was motivated in substantial part by discriminatory intent was a permissible view of this evidence and therefore not clearly erroneous.

The record supports the district court's finding that Gold's second proffered reason — that Thompson was approximately twenty-one years old when she

committed petty theft — supports an inference of pretext. Juror 11 had two non-juvenile offenses, yet Gold failed to inquire about Juror 11's age at the time of them, and indeed asked no questions at all about the criminal history revealed by either Juror 8 or Juror 11.[2]

The record supports the district court's finding that Gold's fourth proffered reason — that Thompson had a prior bad experience with the police — supports an inference of discrimination. Gold had a tense exchange about this experience with Thompson, who stated that it occurred "[f]our or five years ago" and "doesn't bother [her]" anymore, In contrast, Alternate Juror 3 *sua sponte* raised in his questionnaire his concern regarding unwarranted harassment of African-American males. At voir dire, Alternate Juror 3 elaborated substantially on those concerns in an exchange with defense counsel, yet Gold asked no questions about it. As the district court explained, "[t]he fact that a non-black person concerned about law enforcement fairness was neither questioned nor excused while Thompson was struck supports an inference of discrimination."

The record supports the district court's finding that Gold's fifth proffered reason — that Thompson's strong agreement with the proposition that "it is better

---

[2] With the exception of Alternate Juror 3, the individual jurors discussed herein — Jurors 1, 3, 7, 8, 9, and 11 — were seated on the jury. As stated above, none of the empaneled jurors was African-American.

for society to let some guilty people go free than to risk convicting an innocent person" showed "specific bias" — was pretextual. That proposition is a fundamental value of our criminal justice system, not a statement of specific bias against the prosecution. *See Schlup v. Delo*, 513 U.S. 298, 325 (1995). Moreover, Juror 9 noted strong agreement with the same proposition, yet was not questioned about it. Jurors 1 and 11 each strengthened their commitment to that proposition during voir dire exchanges with defense counsel, yet Gold did not question either of them on the subject. Juror 7 changed her position from strong disagreement to what appeared to be strong agreement with that proposition, yet Gold did not question her either.

The record supports the district court's finding that Gold's sixth proffered reason — that Thompson's strong disagreement with the proposition that "if the prosecution brings someone to trial, that person is probably guilty" showed "specific bias" — was pretextual. Her answer reflected her agreement with the presumption of innocence that is basic to our criminal justice system, not any specific bias against the prosecution. Moreover, six of the empaneled jurors gave the same answer as Thompson, yet Gold questioned none of them about it.

The record supports the district court's finding that Gold's seventh proffered reason — that Thompson's belief that the criminal justice system treats people

9

unfairly because of their race shows "specific bias" — was pretextual.  Alternate

Juror 3, who as discussed above *sua sponte* commented on unwarranted

harassment of African-Americans, noted the same concern as Thompson, yet Gold

did not question him about it.  Several seated jurors also testified during voir dire

concerning racism in the criminal justice system, yet Gold did not question them

either.

The record supports the district court's finding that Gold's eighth proffered

reason — that Thompson was single and never married — was pretextual.  Jurors 3

and 7 were also single and never married, yet Gold allowed them to be seated.

In light of these well-supported findings, the district court did not clearly err

in finding that, based on the totality of the relevant facts, Gold's peremptory strike

of Thompson was motivated in substantial part by race.  "A court need not find all

nonracial reasons pretextual in order to find racial discrimination.  '[I]f a review of

the record undermines . . . many of the proffered reasons, the reasons may be

deemed a pretext for racial discrimination.'" *Kesser v. Cambra*, 465 F.3d 351, 360

(9th Cir. 2006) (en banc) (quoting *Lewis v. Lewis*, 321 F.3d 824, 830 (9th Cir.

2003)).  Here, the district court had ample support for its finding that many of

Gold's proffered reasons were undermined by the record.  Its ultimate finding of

racial discrimination was, accordingly, consistent with our case law and not in any respect clearly erroneous.

The district court's decision to grant the writ is **AFFIRMED**.[3]

---

[3] Petitioner's motion for release is denied.